## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| I.K. o/b/o Z.S., | Civil Action No. |
| Plaintiff, | 16-9152 (MCA) (LDW) |
| v. | **REPORT & RECOMMENDATION** |
| MONTCLAIR BOARD OF EDUCATION, | |
| Defendant. | |

**LEDA DUNN WETTRE, United States Magistrate Judge**

Before the Court is plaintiff's renewed motion for an award of attorneys' fees pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(i)(3)(B). (ECF No. 61). Defendant opposes the motion. (ECF No. 51). The Hon. Madeline Cox Arleo, U.S.D.J., referred the motion to the undersigned for a Report and Recommendation. This motion is decided without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. Having considered the parties' written submissions and for the reasons set forth below, the Court recommends that plaintiff's motion for attorneys' fees be **GRANTED IN PART AND DENIED IN PART**.

### I.    BACKGROUND

This is an application for attorneys' fees following Judge Arleo's denial of both plaintiff's motion for summary judgment and defendant's motion to dismiss or, in the alternative, for summary judgment. *See I.K. o/b/o Z.S. v. Montclair Bd. of Ed.*, Civ. A. No. 16-9152, 2018 WL 2441761 (D.N.J. May 31, 2018). The Court briefly recites the underlying facts, which are largely undisputed.

Z.S. has been legally blind since her birth in 2013. (*Id.* at *1). Plaintiff I.K., Z.S.'s mother, sought special educational services for her child from the Montclair Public Schools, which are supervised and managed by defendant Montclair Board of Education (the "District"). (*Id.*). On May 2, 2016, the District held a meeting to discuss an individualized education program ("IEP") for Z.S. (*Id.* at *3). The District proposed placing Z.S. at St. Joseph's School for the Blind for the summer of 2016, and in a half-day inclusion class at the District's Developmental Learning Center for the fall of 2016. (*Id.*). Plaintiff, however, felt that Z.S. should be placed in a full-day regular education program at the Montclair Community Pre-K; accordingly, plaintiff requested mediation to resolve the dispute over Z.S.'s 2016 educational placements. (*Id.*).

The parties attended a mediation on June 13, 2016, at which they reached an agreement that Z.S. would participate in a full-day inclusion class at the Developmental Learning Center during the 2016-2017 school year. (*Id.*). Plaintiff apparently had a change of heart regarding Z.S.'s agreed-upon placement and, on August 29, 2016, filed a due process petition with the New Jersey Department of Education. (*Id.*). The due process petition alleged that Z.S.'s IEP, as modified by the parties' June 13, 2016 mediation agreement, deprives Z.S. of a free appropriate public education because it fails to provide her with a placement in the least restrictive environment. (*Id.*). On September 2, 2016, the District filed a notice challenging the sufficiency of the due process petition or, in the alternative, requesting dismissal of the petition based on the mediation agreement. (*Id.*). On September 13, 2016, Administrative Law Judge Candido issued a decision dismissing the due process petition as insufficient, concluding that the mediation agreement binds the parties and prevents plaintiff from relitigating the issue of Z.S.'s placement. (*Id.*).

In an amended complaint dated May 23, 2017, plaintiff asserted claims pursuant to the IDEA, the Rehabilitation Act of 1973, and the New Jersey Law Against Discrimination. (Am. Compl., ECF No. 16). With respect to the IDEA claims, Count 1 of the amended complaint alleges that the District failed to provide Z.S. with a free appropriate public education in the least restrictive environment, and Count 6 appeals Judge Candido's sufficiency determination to the district court. (*Id.*). With respect to relief sought, plaintiff primarily asked that the district court make findings as to the sufficiency of the due process complaint and the adequacy of the district's placement of Z.S.; alternatively, plaintiff requested that the case be remanded for an administrative hearing on the merits. (*Id.* at 21-22). On October 13, 2017, plaintiff filed a motion for summary judgment asking the district court to overrule Judge Candido's sufficiency decision, decide the case on the merits itself, and award her compensatory education; notably, plaintiff urged the district court *not* to remand this matter back to the Office of Administrative Law. (Pl. Summary Judgment Br. at 30, 31, 32, 34, 36, ECF No. 36). Defendant filed a cross-motion to dismiss all claims for lack of jurisdiction or alternatively for judgment that the parties are bound by the mediation agreement. (ECF No. 37). Judge Arleo rejected both parties' positions, denied both motions, and instead stayed Counts 1 through 5 (one of plaintiff's IDEA claims, as well as the Rehabilitation Act, and New Jersey state law claims) pending remand of the case to the Administrative Law Judge for an evidentiary hearing. *See I.K. o/b/o Z.S.*, 2018 WL 2441761, at *3 n.4, *4.

Plaintiff's counsel then moved for an award of attorneys' fees pursuant to the IDEA's fee shifting provision. (ECF No. 50). However, as counsel has represented plaintiff in a number of related matters, the Court was unable to discern from the billing records submitted in support of the fee application whether the hours claimed related solely to the instant action. Counsel agreed

to withdraw the motion without prejudice to refiling with supporting documentation that set forth more clearly the fees sought. (ECF No. 60). The renewed motion for attorneys' fees is now ripe for disposition.

## II.    DISCUSSION

The IDEA provides that "the court, in its discretion, may award reasonable attorneys' fees as part of the costs to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i)(I). Therefore, the Court must determine if plaintiff is a prevailing party within the meaning of the statute and, if so, calculate a reasonable amount of fees to compensate counsel for prosecuting plaintiff's IDEA claim to this point.

### A.    Prevailing Party

Prevailing parties are those that "'succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" *J.O. ex rel. C.O. v. Orange Twp. Bd. of Educ.*, 287 F.3d 267, 271 (3d Cir. 2002) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). To determine whether a party is a prevailing party within the meaning of the IDEA, the Court considers: "First, 'whether plaintiffs achieved relief,' and second, 'whether there is a causal connection between the litigation and the relief from the defendant.'" *Id.* (quoting *Wheeler v. Towanda Area Sch. Dist.*, 950 F.2d 128, 131 (3d Cir.1991)). With respect to the relief element, a prevailing party "need not achieve all of the relief requested" and the relief granted "need not be the exact relief requested as long as it goes toward achieving the same goal." *Id.* With respect to the causation element, "a plaintiff must show that litigation was a material contributing factor in bringing about the events that resulted in obtaining the desired relief." *D.F. v. Collingswood Borough Bd. of Educ.*, 694 F.3d 488, 501 (3d Cir. 2012) (quotation omitted).

The Third Circuit has clarified that

4

if a parent vindicates a procedural right guaranteed by the IDEA, and if the relief she obtains is not temporary forward-looking injunctive relief, then she is a prevailing party under the IDEA attorneys' fee provision and is eligible for an award of attorneys' fees [pursuant to] 20 U.S.C. § 1415(i)(3)(B)(i). Particularly given the importance Congress attached to the IDEA's procedural safeguards, we readily conclude that even a purely procedural victory under the IDEA can confer prevailing party status.

Such is the case here, where Plaintiffs vindicated their right to an IDEA procedural due process hearing. That remedy, for purposes of Plaintiffs' procedural rights, is permanent relief, cannot be nullified later, and thus is not temporary forward-looking injunctive relief. Plaintiffs therefore are prevailing parties under the IDEA, and they are eligible for an award of reasonable attorneys' fees.

*H.E. v. Walter D. Palmer Leadership Learning Partners Charter Sch.*, 873 F.3d 406, 413

(3d Cir. 2017) (internal quotations, citations, and alterations omitted).

Thus, despite the fact that Judge Arleo denied plaintiff's motion for summary judgment, and despite the fact that after years of litigation plaintiff has not achieved anything close to success on the merits of her claim that the District failed to provide Z.S. a free appropriate public education, Judge Arleo did *sua sponte* grant plaintiff the alternative relief requested in the amended complaint with respect to Count 6 – that is, remand to the ALJ for a determination of the merits of the allegations in the due process petition. As a result, the Court believes it is constrained by the Third Circuit's opinion in *H.E.* to find that plaintiff is a prevailing party entitled to an award of reasonable attorneys' fees.

### B.    Lodestar Calculation

"The starting point for determining the amount of a reasonable fee is the lodestar, which courts determine by calculating the 'number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *McKenna v. City of Philadelphia*, 582 F.3d 447, 455 (3d Cir. 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The prevailing party seeking fees bears the burden of establishing that that the attorney's hourly rate and the number of hours

billed are reasonable. *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 703 n.5 (3d Cir. 2005). The party opposing the fee application must then "challenge, by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). Although the lodestar calculation produces a presumptively reasonable fee, the Court may, in its discretion, adjust the lodestar to account for the degree of success achieved – the "most critical factor" in determining a reasonable fee award. *Hensley*, 461 U.S. at 436; *see D.O. o/b/o M.O. v. Jackson Twp. Bd. of Educ.*, Civ. A. No. 17-1581, 2019 WL 1923388, at *2 (D.N.J. Apr. 30, 2019) ("[W]here a plaintiff has achieved only limited or partial success, 'the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount' . . . [which] the Court may exercise its measured discretion to reduce." (quoting *Hensley*, 461 U.S. at 436)).

### 1.    Hourly Rates

With respect to the billing rate claimed, "a reasonable hourly rate is calculated according to the prevailing market rates in the relevant community." *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001). Plaintiff seeks to recover fees for worked performed by attorneys at the law firm of John Rue & Associates at the following rates:

| Attorney | Hourly Billing Rate |
|---|---|
| John Rue | $450 |
| Krista Haley (Partner) | $445 |
| Counsel (10 or more years of experience) | $400 |
| Managing Associate (5-10 years of experience) | $350 |
| Associate (2-5 years of experience) | $300 |
| Junior Associate (0-2 years of experience) | $250 |
| Law Clerk (not yet admitted) | $200 |
| Paralegal work (by whomever performed) | $150 |

(Decl. of John Rue ¶ 7, ECF No. 61-3). Defendant has not stated any objections to the hourly billing rates sought. The Court has reviewed the Declaration of John Rue, which sets forth in detail

his qualifications and experience, as well as the Certifications of David Giles, Staci Greenwald, and Catherine Merino Reisman, all of whom opine that the hourly rates charged by the John Rue & Associates firm fall within the range of rates charged by attorneys of comparable skill, education, and experience representing parents in special education cases in New Jersey. (ECF Nos. 61-3, 61-5, 61-6, 61-7). The Court also notes that plaintiff's counsel's billing rates are generally in line with the Community Legal Service of Philadelphia Attorney Fees schedule, a commonly used point of reference. In light of this evidence, and the lack of any objection from defendant, the Court finds that plaintiff has established that counsel's billing rates are on the high end of reasonable. *See D.O. o/b/o M.O.*, 2019 WL 1923388, at *3-*5 (finding identical billing rates requested by John Rue & Associates to be reasonable).

### 2.      Hours of Work Performed

A "prevailing party is not automatically entitled to compensation for all the time its attorneys spent working on the case; rather, a court awarding fees must 'decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant, or otherwise unnecessary.'" *Interfaith*, 726 F.3d at 416 (quoting *Pub. Interest Research Grp. of N.J., Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995)). In calculating the number of hours reasonably expended the Court "'may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut.'" *Am. Bd. of Internal Med. v. Von Muller*, 540 F. App'x 103, 107 (3d Cir. 2013) (quoting *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (per curiam)). Indeed, plaintiff has proposed a 25% discount in lieu of a line-by-line review of its billing entries.

Such an across-the-board reduction is particularly appropriate here because plaintiff's fee application includes over 300 line entries from 17 different attorneys and paraprofessionals

charging 8 different billing rates. If the Court were to perform line-by-line adjustments to the hours sought, it would in effect have to calculate 17 separate lodestars, add them together, and then consider further adjustments to the combined result. Moreover, the Court has thoroughly reviewed the billing invoice submitted in support of the number of hours worked and finds it extremely difficult to decipher. Numerous line entries are redacted, and counsel did not provide the Court with an unredacted copy; numerous line entries are struck through or partially struck through without a clear explanation from counsel as to what the strikethrough indicates or why those entries were submitted in support of the fee application[1]; and the text of many time entries bleeds into subsequent entries, to the point that some descriptions are superimposed on each other, leaving the Court to makes its best guess as to who performed what work.[2] While plaintiff's motion papers request total, unadjusted fees of $117,877 representing 339.5 hours of work performed from July 7, 2016 to May 21, 2018, the billing invoice submitted in support of that application appears to include time entries totaling $118,837.[3] This discrepancy is relatively minor in dollar terms, but it indicates that not all time entries submitted are intended to be considered in the lodestar

---

[1] *See, e.g.*, Rue Decl., Ex. A at 14, ECF No. 61-3.

| Mar 31, 2017 | DRG | Drafted portions of proposed amended complaint (2.3); reviewed relevant documents (1.3); conferred regarding same (.3) | $400.00 3.9 | $1,550.00 |
| Mar 31, 2017 | JR | Review of OPRA requests. | $450.00 0.2 | $90.00 |

[2] *See, e.g.*, Rue Decl., Ex. A at 21.

| Aug 28, 2017 | JR | Preparation for call ▮▮▮, | $450.00 0.2 | $90.00 |
| Aug 31, 2017 | | with Conference with | $445.00 0.1 | $44.50 |
| KH | Aug 31, 2017 | Attention to legal strategy; drafting letter to opposing counsel re discovery issues. | $450.00 2 | $900.00 |
| Sep 08, 2017 | JR JN | research into ▮▮▮ | $200.00 1.5 | $300.00 |

[3] *See* Rue Decl., Ex. A at 24 (Total Fees $145,623.50 – "Deferred" Fees $23,786.50 = $118,837).

calculation, and the Court has no way to determine which time entries are not relied upon. Finally, counsel did not subtotal the number of hours worked by each time biller or summarize the total number of hours the firm collectively devoted to discrete tasks.

The Court has already requested that plaintiff's counsel revise its fee application to provide additional clarity, with minimal result. It will proceed to perform its "positive and affirmative function in the fee fixing process" with the documentation submitted, *Maldonado*, 256 F.3d at 184, recognizing that "the court will inevitably be required to engage in a fair amount of 'judgment calling' based upon its experience with the case and its general experience as to how much time a case requires," *Bell v. United Princeton Props., Inc.*, 884 F.2d 713, 721 (3d Cir. 1989). Thus, the Court considers the reasonableness of the aggregate hours counsel devoted to each phase of the litigation and defendant's objections thereto. The Court believes this method to be the best way to achieve "[t]he essential goal in shifting fees" – that is, "to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

### a.   Phase I: Retention Through Due Process Petition

Plaintiff requests reimbursement for 22.9 hours of work performed from July 7, 2016 through September 1, 2016. This represents time spent on initial client intake, prefiling diligence using New Jersey Open Public Records Act ("OPRA") requests, drafting a settlement proposal, and then drafting the August 29, 2016 due process petition.

Defendant objects to an award of any fees for work performed prior to September 26, 2016, the date when plaintiff began drafting the appeal of the ALJ's sufficiency decision to this Court. In other words, defendant argues that even if plaintiff technically prevailed at the federal level, it was not the prevailing party before the ALJ and should not be awarded fees for work related to the administrative proceedings. Courts routinely award prevailing party fees for work performed prior

to filing a due process complaint – for example, case investigation, client meetings, and drafting the complaint – where such activities "occur within a reasonable time of the due process hearing" and are "sufficiently related to the due process complaint." *Mars Area Sch. Dist. v. C.L.*, No. 14-cv-1728, 2015 WL 8207463, at \*5 (W.D. Pa. Dec. 7, 2015). *See, e.g.*, *D.O. o/b/o M.O.*, 2019 WL 1923388, at \*6 (awarding fees related to N.J. Department of Education mediation and due process matter); *R.C. v. Bordentown Reg'l Sch. Dist. Bd. of Educ.*, Civ. A. No. 05-3309, 2006 WL 2828412, at \*5 (D.N.J. Sept. 29, 2006) (awarding fees related to due process petition).  While defendant is correct that plaintiff did not prevail before the ALJ, the time spent in administrative proceedings was a necessary precursor to the instant federal action, where plaintiff achieved prevailing party status – albeit in a purely technical sense – and the Court believes that time may be included in a fee award under 28 U.S.C. § 1415(i)(3)(B)(i)(I).

Furthermore, the Court has reviewed the billing entries submitted for the period between July 7, 2016 and September 1, 2016 and finds that 22.9 hours over a two-month period spent investigating plaintiff's claims, pursuing mediation, and drafting the due process petition is reasonable. *Compare Mars Area Sch. Dist.*, 2015 WL 8207463, at \*6 (finding 23.8 hours to be reasonable for counsel "familiarizing himself with the case, communicating with his client, researching [the child's] educational background and needs, communicating with counsel, and preparing for the hearing" (quotation omitted)); *R.C.*, 2006 WL 2828412, at \*5 (D.N.J. Sept. 29, 2006) (finding 9 hours to be reasonable amount of time for preparing due process petition).

### b.    Phase II:  Sufficiency Challenge

Next, plaintiff requests reimbursement for 9 hours of work performed from September 7, 2016 to September 14, 2016.  This represents time spent researching and drafting its opposition to defendant's sufficiency challenge to the due process petition and communicating with the client.

As discussed above, the Court finds that this work was a necessary precursor to the federal matter and may be included in a fee award. The Court further finds that 9 hours over a two-week period spent on the above-referenced activities is reasonable.

### c.   Phase III:  Appeal to DNJ

The vast majority of plaintiff's fee application relates to work performed in the instant action.  Plaintiff requests reimbursement for a total of 307.6 hours of work performed by 15 different professionals from September 15, 2016 (immediately following Judge Candido's sufficiency determination) to May 21, 2018 (shortly before Judge Arleo remanded this case for further proceedings) as follows:

| Phase III Task | Hours |
|---|---|
| Client Communications/Strategy/Gen'l File | 20.3 |
| Case Research & Drafting of Pleadings and Court Correspondence | 186.9 |
| Settlement Analysis, Communications, Conferences | 28.0 |
| Misc. Communications with Adversary | 7.4 |
| Fact Gathering via OPRA | 1.3 |
| Dispositive Cross Motions | 63.7 |
| **Total** | **307.6** |

First, defendant objects to any billing entry that does not identify the time biller by name – *i.e.*, all entries. The Court agrees that plaintiff's decision to identify the professionals who worked on this matter only by their initials is inexplicable and makes it difficult for the Court to assess the reasonableness of the fee application. For example, knowing the name of the time biller identified as "WP" and some biographical information would help the Court determine what reasonable value he or she added in the total of 0.7 hours billed to this matter, and why he or she should be compensated for traveling from Philadelphia to John Rue & Associates' office in Bloomfield, New Jersey to devote 12 minutes to "Attention to strategy" on June 16, 2016.

Second, defendant objects to any time entry referencing OPRA requests – by the Court's count, there are only 9 such entries. OPRA is a valid method of fact gathering, particularly in the

early stages of an action before formal discovery has begun, and defendant sets forth no basis for entirely excluding time devoted to OPRA requests. Of greater concern to the Court, however, is the fact that some of plaintiff's time entries do not specify the recipient of the relevant OPRA request. Plaintiff was involved in separate state court litigation against the District regarding certain OPRA requests and previously won an award of attorneys' fees related to that OPRA litigation. *See* Rue Cert., Ex. I, ECF No. 61-3. Thus, while some time entries submitted clearly state that the work relates to an OPRA request to the Commission for the Blind, the Court cannot discern whether entries such as "Draft OPRA request" relate to the OPRA litigation for which plaintiff has already been awarded legal fees.

Third, defendant objects to any time entry for legal research, the topic of which has been redacted. "A fee petition is required to be specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed." *Rode*, 892 F. 2d at 1190 (quotation omitted)). Courts generally accept the time description "legal research" without further detail as sufficiently specific. *See D.O. o/b/o M.O.*, 2019 WL 1923388, at *7; *Shanea S. v. Sch. Dist. of Philadelphia*, Civ. A. No. 12-1056, 2014 WL 2586940, at *5 (E.D. Pa. June 10, 2014). The Court is also sensitive to counsel's desire to protect attorney work product. However, the Court questions how a law firm that focuses its practice on special education litigation justifies spending (by the Court's count, excluding time entries that are struck through) approximately 100 hours on legal research in this matter. "A fee applicant cannot demand a high hourly rate . . . based on his or her experience, reputation, and a presumed familiarity with the applicable law and then run up an inordinate amount of time researching that same law." *Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir. 1983). Counsel could and should have provided the Court with an unredacted copy of its invoice for review *in camera*, and without such further detail regarding the scope of research

performed it is difficult for the Court to assess the reasonableness of what appears to be an unusually large amount of time devoted to legal research.

Fourth, defendant objects to numerous time entries for clerical work such as "case management," "case review," "attention to calendar," or "attention to file." The Court agrees. Not only are these entries so vague as to be meaningless, "clerical work should not be billed at the rate of an experienced attorney." *D'Orazio v. Washington Twp.*, Civ. A. No. 07-5097, 2011 WL 6715635, at *5 (D.N.J. Oct. 18, 2011).

Fifth, defendant objects to time spent in internal attorney conferences, particularly as those conferences relate to transferring responsibility for this matter as attorneys left the John Rue & Associates law firm. Plaintiff's counsel acknowledges that his firm experienced "significant turnover in staff" during the relevant time period and proposes a 25% across-the-board cut to address the overlap in work and inefficiencies that may have resulted. The Court agrees that a reduction in hours sought is warranted to account for the duplication of effort that inherently results when 17 professionals work on a single, straightforward matter.

Sixth, defendant objects to entries for which the time is "split between three cases." The Court sees only one time entry that is marked "DIVIDED BETWEEN ALL THREE CASES." On April 18, 2017 for 1.2 hours billed by John Rue for the drafting of a settlement letter. The Court is cognizant of plaintiff's efforts to achieve a global settlement of all pending litigation with the District and finds that attributing a total of 1.2 hours to the IDEA client/matter for such work is reasonable.

Seventh, defendant argues that plaintiff's fee application includes costs associated with a separate administrative proceeding before the Honorable Barry Moscowitz. As defendant did not

identify any specific time entry it believes should have been billed to a different client/matter number, the objection is overruled.

Eighth, defendant argues that it is unclear whether time entries that reference an appeal pertain to the underlying due process petition before Judge Candido or the matter before Judge Moscowitz. Again, defendant has not identified any specific time entry that potentially should have been billed to a different client/matter number.

Ninth, defendant objects to time entries that reference Magistrate Judge Michael A. Hammer of this Court. However, Judge Hammer was the presiding Magistrate Judge from December 12, 2016 until the case was reassigned on May 15, 2018, and Judge Hammer conducted the Rule 16 initial scheduling conference on March 29, 2017. It is unclear to the Court why defendant believes those time entries are unrelated to the instant matter.

Tenth, defendant argues that time entries from approximately May 17, 2017, August 15, 2017, and from May 11, 2018 onwards related to settlement should be excluded from any fee award. The Court advised plaintiff that it does not consider certain time devoted to settlement efforts to be compensable, specifically time spent on global settlement efforts from December 2018 through February 2019, well after Judge Arleo issued her ruling on the summary judgment motion. *See A.V. v. Burlington Twp. Bd. of Educ.*, Civ. A. No. 06-1534, 2008 WL 4126254, at *6 (D.N.J. Sept. 2, 2008) ("[W]ork expended after the sole source of success was achieved likewise cannot be thought of as having contributed to that success."). The fee application does not seek compensation for time beyond May 2018. Plaintiff's counsel billed 28 hours for its unsuccessful request for a settlement conference with Judge Hammer in 2017, and for preparation and attendance at a settlement conference before the undersigned on May 21, 2018. The Court finds

that time devoted to pre-summary judgment settlement efforts is compensable, but 28 hours for such work is excessive.

Finally, defendant argues that plaintiff's counsel, who is experienced in the field of special education law, billed an excessive number of hours in the federal litigation. Defendant highlights by way of example: (1) approximately 78 hours spent on legal research and drafting the operative complaint in *I.K. o/b/o Z.S. v. Montclair Public Schools*, Civ. A. No. 16-9152; (2) approximately 20 hours spent reviewing and revising a joint discovery plan for a case in which there has been no real discovery because the parties proceeded on a stipulated record; (3) approximately 64 hours spent drafting and reviewing its partial summary judgment motion and its opposition to defendant's motion to dismiss. The Court appreciates that the John Rue firm emphasizes training young lawyers and working collaboratively, but those admirable goals do not justify the staggering 307.6 hours counsel billed on a case that required drafting a complaint, dispositive motions on a stipulated record, and attending one settlement conference.

Defendant's meritorious objections, taken as a whole, amply support a reduction in the number of hours plaintiff's counsel billed to this matter. Counsel's suggestion of a 25% across-the-board cut, however, does not adequately rectify the magnitude of "excessive, redundant, or otherwise unnecessary" hours included in this fee application. As discussed above, plaintiff presented its application in such a way as to make line-by-line adjustments impracticable, if not impossible. After careful consideration of the billing invoice, the certifications presented in support of counsel's fee application, defendant's specific objections, and the undersigned's own extensive history with this matter, the Court recommends a 50% reduction in the number of hours related to work performed in the federal action, as follows:

| Phase III Task | Hours Requested | Fees Requested | Adjusted Hours 50% Reduction | Adjusted Fees 50% Reduction |
|---|---|---|---|---|
| Client Communications/ Strategy/Gen'l File | 20.3 | $7,231.50 | 10.15 | $3,615.75 |
| Case Research & Drafting of Pleadings and Court Correspondence | 186.9 | $62,224.50 | 93.45 | $31,112.25 |
| Settlement Analysis, Communications, Conferences | 28.0 | $10,880.00 | 14.0 | $5,440.00 |
| Misc. Communications with Adversary | 7.4 | $3,188.50 | 3.7 | $1,594.25 |
| Fact Gathering via OPRA | 1.3 | $405.00 | 0.65 | $202.50 |
| Dispositive Cross Motions | 63.7 | $23,135.00 | 31.85 | $11,567.50 |
| **Total** | **307.6** | **$107,064.50** | **153.8** | **$53,532.25** |

Thus, the final lodestar calculation is:

| Phase | Hours Requested | Fees Requested | Adjusted Hours | Adjusted Fees |
|---|---|---|---|---|
| I | 22.9 | $7,587.50 | 22.9 | $7,587.50 |
| II | 9.0 | $3,225.00 | 9.0 | $3,225.00 |
| III | 307.6 | $107,064.50 | 153.8 | $53,532.25 |
| **Total** | 339.5 | $117,877.00 | 185.7 | **$64,344.75** |

## C.    Adjustments to Lodestar

After calculating the lodestar, the Court may apply further reductions to account for the fact that "while Plaintiffs were successful enough to carry themselves across the statutory threshold as prevailing parties, they did not obtain excellent results." *A.V.*, 2008 WL 4126254, at *7 (quotation omitted). Such is the case here, where after three years and hundreds of hours of legal work, plaintiff is essentially in the same position as she was in September 2016 – awaiting a hearing on her due process petition. None of the claims in this federal action have been resolved. Despite the lack of success achieved, the Court does not believe further adjustment to the lodestar is necessary in light of the 50% across-the-board reduction that has already been applied. Put another way, the lodestar as reduced adequately represents the degree of success counsel has attained for the plaintiff.

### D.   Unclean Hands

Finally, plaintiff's counsel requests that the Court abdicate its "positive and affirmative function in the fee fixing process" and simply rubber stamp the fee application to punish defendant's alleged bad faith conduct in failing to settle this matter. Plaintiff acknowledges that while the IDEA allows the Court to reduce an award of attorneys' fees as a sanction against a parent or parent's attorney who "unreasonably protracted the final resolution of the controversy," 20 U.S.C. § 1415(i)(3)(F)(i), there is no such provision for sanctioning a state or local educational agency. Instead, plaintiff asks the Court to award her counsel the entirety of its requested fees as a sanction authorized by its inherent authority or the equitable doctrine of unclean hands.

A sanction issued pursuant to either the Court's inherent authority or the unclean hands doctrine would require, at a minimum, a finding of bad faith conduct by the District. *See J.L. v. Harrison Twp. Bd. of Educ.*, Civ. A. No. 14-2666, 2016 WL 4430929, at *2 (D.N.J. Aug. 19, 2016). The Court does not so find. While plaintiff might wish it otherwise, the IDEA's emphasis on collaboration between parents and schools does not *per se* entitle her to a settlement. More importantly, in the Court's view, *both* parties contributed to protracting this litigation and the failure to settle: the District by taking an early "no settlement" position, and plaintiff by barraging the District with litigation and demanding attorneys' fees as part of a potential settlement in an amount which, as evidenced by the instant fee application, is significant. Accordingly, the Court recommends denying plaintiff's request for the entirety of her attorneys' fees by default as a sanction on the District.

### III.   CONCLUSION

For the foregoing reasons, the Court recommends that plaintiff's motion be **GRANTED IN PART AND DENIED IN PART** and that plaintiff's counsel be awarded $64,344.75 in

attorneys' fees. The parties are hereby advised that, pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, they have 14 days after being served with a copy of this Report and Recommendation to serve and file specific written objections to the Hon. Madeline Cox Arleo, U.S.D.J.

Dated:        August 28, 2019

                                      Hon. Leda Dunn Wettre
                                      United States Magistrate Judge


Original:     Clerk of Court
    cc:       Hon. Madeline Cox Arleo, U.S.D.J.
              All Parties

18